Good morning Judge Rovner. Good morning, good morning everyone. All right, you're all set are you? Thank you. Okay, the first case this morning is Robert Williams v. Nancy Berryhill, Mr. Horn. Your honors, counsel, ladies and gentlemen, I'm John Horn and I represent Robert Williams, the homeless veteran who's the plaintiff appellate in this case. The first issue I want to bring to your attention is the ALJ's failure to evaluate the side effects of Mr. Williams' medications properly. The ALJ seized upon a report by Mr. Williams that he was not having any side effects from a batch of hypertension medications in 2009 to discredit Mr. Williams' report that he was having drowsiness and dizziness from a different batch of hypertension medications in 2014. The ALJ ignored Mr. Williams' testimony that he was drowsy as a result of his mental health medications. The ALJ ignored Mr. Williams' testimony that he was drowsy as a result of or his written evidence that he was drowsy as a result of other medications. The vocational expert testified that anybody who dozed off as much as Mr. Williams testified he did would be unemployable. The case has to be remanded for that issue alone. Then there were the non-existent records cited by the ALJ to discredit Mr. Williams on the basis of his activities of daily living. Even if we leave aside the failure to cite the records properly and the citation of non-existent records, the simple meals and driving once a week don't give rise to an inference that somebody can be on his feet for six hours out of eight and lift up to 20 pounds occasionally. And isn't that the real problem here is his exertional difficulties? The record is uncontroverted that he gets winded because of his COPD and other ailments after 10 feet of walking and if he can't exert himself even to that extent, how can he do this degree of even light work? And that was insufficiently considered, it seems to me. The side effects issue is in the case, certainly, but the stronger issue is this exertional difficulty. Exactly. And the ALJ ignored that with respect to the preparation of simple meals. Williams used paper plates and disposable utensils so he would have to exert himself even less and his driving was limited to about two blocks. Now just because he could keep himself clean and throw some clothes in a washer and dryer and do a few dishes just does not give rise to a fair inference that he could do light work, which is lifting 20 pounds occasionally and being on his feet for six hours out of eight. When did Mr. Williams become homeless? That was rather late in the game. I think it was 2013 or 2014, but the record will correct me if I'm wrong. Now where is he living at present? He lives in shelters. He calls my office every couple of months to see how things are going. One more thing that was ignored by the ALJ in the evaluation of Mr. Williams' activities of daily living is that he mentioned that his daughter did the house cleaning. So Williams was at the time when he did have a house. Williams simply was not capable of light work. Between the last review by the state agency physicians and the hearing, a fair amount of evidence came in about Williams' asthma, high blood pressure, neuropathy, coronary artery disease, and other coronary problems. The ALJ found severe, more impairments than his reviewers had found. And by severe, I mean having more than a minimal impact on work-related activities. And that suggests that the ALJ should have consulted a doctor to see what the limitations caused by this new evidence would be. Because not being a doctor, as the sweet case says, he's not capable of formulating what the limitations are. The anesthesiologist thought that the claimant's impairments imposed some limitations, although he didn't specify what. And so did the cardiologist, which indicates that this new evidence ought to have been evaluated by a physician to determine what the limitations were. And finally, the wrong harmless error standard was applied by the district court. The harmless Well, of course a reasonable trier of fact could find differently who evaluated the activities of daily living correctly. Or a reasonable trier of fact could have found Mr. Williams limited to sedentary work, which would have resulted in the application of the grids. So for all those reasons, there wasn't harmless error here. And this case should go back. Any further questions? Doesn't look like. Thank you. Thank you. Miss Hugo. Good morning, Your Honors. My name is Megan Hugo and I represent the Commissioner of Social Security. I'd like to go through the parts. I'm going to start you right out. Because I've spent quite some time trying to figure out how the ALJ is finding that Mr. Williams has an unlimited ability to walk. Ever be reconciled with this record, even if the ALJ might have discredited his allegation that he becomes winded after walking 10 yards. How could anyone possibly characterize his ability to walk as limitless? Yes, Your Honor, and the ALJ did find that Mr. Williams was limited to light work, which according to the ruling would include up to six hours of walking and standing per day. Although he did state within the RFC that Mr. Williams was otherwise unlimited in walking and standing. And that is actually more restrictive than the only specific medical opinions in the record, which are from the state agency doctors, who both found that he could actually perform up to heavy or even very heavy work, despite his asthma and COPD. And the ALJ did discuss evidence in the record regarding those issues. And although Mr. Williams does have several severe impairments, including the respiratory and cardiac impairments, his examinations were mostly normal. There was pulmonary function testing in the record that revealed mild to moderate obstruction with very good response to bronchodilators. And most of his cardiac examinations were... But the effects of such conditions, the respiratory and cardiac problems, might be mild or even moderate, but I don't think that any doctor would characterize his medical history as normal or mainly normal. I mean, there's evidence of coronary artery disease and COPD. I'm so confounded by this case. Well, Your Honor, the state agency doctors did specifically evaluate the COPD and again found that he could perform up to very heavy work. And they did rely on those objective tests of the pulmonary function testing. Yeah, but they never mentioned his asthma, his hypertension, his neuropathy, his depression, his anxiety. They agreed with the diagnosis of COPD, which even they categorized as severe. This is a very hard case for you to have to defend. Well, Your Honor, the ALJ did recognize that evidence came into the record after the state agency doctors issued their opinions. And that's why the ALJ reduced Mr. Williams' residual functional capacity significantly from what those doctors said. I think it's also significant that all of these impairments were present well before Mr. Williams' onset date. And this is a Step 4 case, meaning the ALJ found that he could do work that he did in the past, which he did do with those impairments. And the ALJ found, based on the medical records, that there really wasn't evidence of worsening over time. And that really isn't contested in this case. So Mr. Williams did perform this. He called it a gym teacher. It was classified by the vocational expert as a recreation aid. And the landscaper job at the light level, he performed both of those with his impairments prior to his onset date. And that was one of the major themes of the ALJ's decision is, you know, despite these impairments, he was able to work in the past. He's a superman of some sort. He's using inhalers twice a day. He's taking medication for his blood pressure. He's had a stroke. He said that the medication causes drowsiness, for which he naps two or three times a day for 20 to 60 minutes. Can you imagine someone on a playground who is napping while the children are, you know, leaping around? Well, and Your Honor, with regard to that, you know, the ALJ found that he had not reported the symptoms of drowsiness to his doctors. Now, Mr. Horne is correct that the ALJ statement was too specific. The ALJ specifically mentioned lisinopril when Mr. Williams testified just generally that his blood pressure pills made him drowsy. But the general point still stands that he never reported that drowsiness to his doctors from any of his blood pressure medications during the relevant time period. And this Court has found that an ALJ can properly consider whether or not an ALJ has reported symptoms to his, I'm sorry, side effects to his doctors. And Mr. Williams did not do that in this case. I wanted to go, if there are no further questions on this point, I wanted to go into the activities of daily living that were raised earlier in Mr. Horne's presentation. And, you know, in particular, this is only one aspect of the ALJ's subjective symptom analysis. The Court has been critical of ALJs in the past for over-relying on activities of daily living or finding that they equate to full-time work. But that's not what the ALJ did here. As one aspect of the subjective symptom analysis, the ALJ did consider Mr. Williams' statements regarding his activities but did not equate them with full-time work and specifically said that they didn't support disabling limitations but never equated them with work and didn't overemphasize them. With regard to Your Honor's point about the winded with exertion, you know, Mr. Williams testified that he could only walk 10 yards, which is a very significant limitation. And the ALJ did specifically address that. And, in fact, there is testimony about that at the hearing. The ALJ asked Mr. Williams' representative what in the record would support such a severe limitation. And counsel couldn't identify anything, conceded that the pulmonary function testing wouldn't support such a limitation. And, in fact, there's no medical opinion in the record that specifically says that Mr. Williams is more limited than light work. There's Dr. Krishnasamy's opinion, who's the cardiologist, who just said that he's limited with shortness of breath and neuropathy. And then there's an anesthesiologist statement that says he's limited by shortness of breath on exertion. But the ALJ also found he was limited by shortness of breath with exertion, and that's why the ALJ reduced his functional capacity. How is that consistent with the ability to do light exertional work for eight hours a day? If all the medical records indicate that he does experience shortness of breath on a regular basis, after very little exertion, whether it's 10 yards or something else, it's an exertional difficulty. Right, and the only two opinions are just not specific. So they say with exertion, they don't say with how much. There's no specific opinion in the record that would say how far he can walk or what he can do. But the ALJ ruled out the existence of any, any, that's the operative word, any limits on his ability to walk. He said he has, quote, unlimited, end quote, ability to walk throughout an eight-hour day. I mean, truly, that lacks support any way you look at it. Yeah, again, I think my interpretation of that was that the ALJ was limiting him to no more than six hours, but I do appreciate the point. But, again, the only specific medical opinion with regard to his functional limitation was heavy to very heavy exertion, and the ALJ found that that wasn't warranted given the medical evidence. But, you know, given the pulmonary function testing and the cardiac testing in the record, the ALJ found that light would be appropriate, and there's no specific opinion in the record that contradicts that. Well, you know, the ALJ went even farther, and he equated very minor household tasks with an ability to walk for eight hours straight. And that kind of logic has been rejected by this Court over and over again. Look at Childress v. Colton at 845.789. That's a 2017 case. Look at Engstrid v. Colton. That's 788F2nd, Seventh Circuit, 2015. Look at Scroggum at 765. Look at Moore at 743. And I can go on because I have a list of cases. This ALJ, I don't know. No, I appreciate that, Your Honor, and, you know, I'm aware of those cases, but I do have to disagree. The ALJ did not equate those activities with an ability to walk for eight hours. The ALJ specifically cited Mr. Williams' activities to contrast his testimony with the record and said that the testimony or, I'm sorry, his reported activities didn't support his allegations that he could only walk ten yards and could only lift three to five pounds with his right arm. And, again, that was only one aspect of the subjective symptom analysis in this case. You know, something else the ALJ went about was his smoking. Mr. Williams is smoking. He is a past smoker. And even if he was still smoking, that would not be a reason to discredit him without evidence of how smoking affects his impairments. And, of course, that's the Childress case. But, anyway. You're right. That's correct. The record the ALJ cited didn't he was technically correct when he said it indicated Mr. Williams rejected smoking cessation information and had a 56-year history of smoking. But the bulk of the records, if you drill down, clearly show that he had quit smoking some years prior. So that was a mistake. But given the other reasons the ALJ gave, you know, and that wasn't something overly emphasized, I think that would be harmless. Counsel, your time has expired. Thank you, Your Honor. Thank you. How much time? You have two minutes, Mr. Williams. Thank you, Judge. I just wanted to say that the testimony from Mr. Williams, if I recall correctly, is that he worked with accommodations up until the alleged onset date, and that just because somebody works prior to the alleged onset date doesn't mean they can work after the alleged onset date. What's his most recent pulmonary workup? I'm sorry? What's his most recent pulmonary workup? I think it was after the last review. So that would have been in 2013 or 2014. Let me have it here. Let's see. Well, yes, it had to have been after the last review in 2013 and before the hearing in 2014, because that's also when the anesthesiologist's opinion that he was limited, that his breathing was limited, that came in then. Is there anything else I can help to court with? I don't believe so. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.